IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PRINCE RICHARD, R17418,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| **JB PRITZKER,** | ) |
| **BRUCE RAUNER,** | ) |
| **JOHN BALDWIN,** | ) Case No. 19-cv-1308-DWD |
| **ROB JEFFREYS,** | ) |
| **FRANK LAWRENCE,** | ) |
| **JACQUELINE LASHBROOK,** | ) |
| **ILLINOIS DEPT. OF CORR.,** | ) |
| **LISA MADIGAN,** | ) |
| **KWAME RAOUL,** | ) |
| **WEDFORD HEALTH SOURCES, INC.,** | ) |
| **SIDDIQUI,** | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on pro se Plaintiff Prince Richard's First Amended Complaint (Doc. 22) and his Motion for a Preliminary/Permanent Injunction or a Temporary Restraining Order (Doc. 24). Plaintiff is an inmate of the Illinois Department of Corrections (IDOC), who is currently incarcerated at Menard Correctional Center (Menard). Plaintiff's original complaint was dismissed in its entirety because it was overly broad and generic and contained "complaints about every aspect of IDOC—including medical, dental, and mental health care, excessive force, overcrowding, double celling, grievance processing" and more. (Doc. 17 at 2). Plaintiff was informed that in addition to being too vague, the complaint violated Federal Rules of Civil Procedure 18-

21, which prohibit parties from joining numerous unrelated claims against a group of defendants in a single lawsuit. (*Id.* at 2-3). Plaintiff was also notified that his original complaint violated Local Rule 5.1(b), which requires pleadings to be clearly legible and double spaced. (*Id.* at 3). Plaintiff was given leave to file an amended complaint, with detailed instructions about formatting and organization. The court also mailed him a copy of the standard civil rights complaint form. Plaintiff filed a timely amended complaint, which the Court now reviews under the terms of 28 U.S.C. § 1915A.

Plaintiff's First Amendment complaint is half the length of his original complaint at just 24 pages. In the First Amended Complaint, Plaintiff breaks his allegations into three claims: 1) Overcrowding Eighth Amendment violation; 2) Overcrowding has created a violent environment; and 3) intentional infliction of emotional distress. (Doc. 22 at 3-22). Despite the three overarching claims, each claim contains many sub-issues. For example, in "Claim 1" Plaintiff complains that his cell is too small, it has caused him severe headaches and other medical issues, defendants have failed to investigate overcrowding, his requests for medical care have been ignored or delayed, the facilities have structural issues (plumbing, ventilation, etc.), extreme temperature fluctuations have made him sick, double-bunking is dangerous, and his grievances are ignored. (*Id.* at 2-14). Claim 2 is similarly sprawling in nature. As the Plaintiff was previously informed, a plaintiff cannot sufficiently state a claim with broad sweeping allegations about the general conditions at a prison.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Under

Rule 8(d), "each allegation must be simple, concise, and direct." The primary purpose of these rules is fair notice. Because claims under 42 U.S.C. § 1983 must be based on a defendant's personal involvement in a constitutional violation, each individual defendant plaintiff wishes to sue must be able to understand what he or she is alleged to have done to violate plaintiff's rights. *See e.g., Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.") *citing Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). "A complaint must contain enough details to connect an individual defendant's actions with a discrete harm. *See e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).

Additionally, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). As Plaintiff was previously warned, Federal Rules of Civil Procedure 18 and 20 limit a plaintiff's ability to combine unrelated claims against different defendants. Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence, or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

In the spirit of Rules 18 and 20, it appears that Plaintiff perhaps attempted to knit his claims together by common themes. For example, in Claim One, he seems to allege that all of the sub-claims are tied by one common theme — the fact that the cells at Menard are simply too small. Although combining claims with a common thread is the right idea,

it does not work when the actual analysis of the sub-claims would require the consideration of different facts and legal standards.  In Plaintiff's specific case, considerations about physical characteristics of his cell (such as the cell being too cold or hot) would rely on one set of factual and legal determinations, while considerations about the alleged 'dangers' of double bunking would require a different inquiry and analysis.  In this way, his complaint still combines too many discrete claims under one umbrella.

Furthermore, Plaintiff's allegations tying his many factual assertions to each defendant are still overly generic.  For example, in association with Claim 1 he writes,

> Plaintiff wrote letters to Baldwin, Pritzker, Lashbrook, Jeffreys, Lawrence, Rauner & filed countless grievances about these issues, wrote to the counselors! Spoke to them when they made rounds! Even filed a different lawsuit where he alerted these defendants by naming them & the attorney generals office represented them so Madigan! Raoul were put on notice that as a direct result of plaintiff being subjected to severe overcrowding he was being subjected to cruel & unusual punishment & forced to suffer unnecessarily.

(Doc. 22 at p. 4 ¶ 5).  Under Rule 8(a)(2), and the standards for § 1983 litigation, this sort of shotgun naming of defendants is not sufficient to connect the individual defendant's personal actions with the allegations of harm made in the lengthy complaint.  The better practice would be for the Plaintiff to speak of allegations specific to each individual defendant in separate paragraphs.  For example, Plaintiff talked to the warden during rounds, Plaintiff sent the warden correspondence on x date, the warden saw y condition when making rounds and ignored it, and so on so forth.  The general responsibility to oversee the operations of a correctional facility or to supervise its staff are not sufficient to create liability under § 1983.  *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

The Seventh Circuit clearly discussed the problems with lawsuits like Plaintiff's in *Burks*. In *Burks*, the Plaintiff filed a § 1983 suit for deliberate indifference to an eye condition that ultimately led to permanent vision impairment. As defendants, the Plaintiff named the "Secretary of the Wisconsin Department of Corrections and work[ed] his way down through its organization chart," naming other supervisory and administrative individuals. The Court commented that "the assumption underlying this choice of defendants—that anyone who knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable—is a bad one." *Id.* at 593. "Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise." *Id.* at 593-94 (internal citation omitted). The Court further wrote,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burk's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. *See Durmer v. O'Carroll*, 991 F.2d 65 (3d Cir. 1993). That is equally true for an inmate complaint examiner. *See Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006).

> []
>
> Burks contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, Monell's rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989).

*Id.* at 595-96.

Plaintiff's complaint runs afoul of the teachings of *Burks* because, like the plaintiff in *Burks*, Plaintiff has named numerous supervisory individuals at all levels of the bureaucratic chain. He claims that governors, the Illinois Attorney General, the Director of the Illinois Department of Corrections, the Warden of Menard and other officials are generally responsible for the large list of problems he has identified with his incarceration at Menard. As explained in *Burks*, this is a misunderstanding of § 1983. A plaintiff cannot recover tort damages by generally alleging that anyone with knowledge of or responsibility for the operation of a prison has harmed him by the conditions of the prison. Plaintiff's allegations are sprawling and generic. For example, he wrote,

> Plaintiff wrote letters to Baldwin, Pritzker, Lashbrook, Jeffreys, Lawrance, Rauner & filed countless grievances about these issues, wrote to the counselors & spoke to them when they made rounds! Even filed a different lawsuit where he altered these defendants by naming them & the attorney generals office represented them so Madigan & Raoul were put on notice that as a direct result of plaintiff being subjected to severe overcrowding he was being subjected to cruel & unusual punishment & forced to suffer unnecessarily.
>
> Defendants had a duty to at the least investigate Plaintiffs claims of overcrowding, pain, suffering, denial of medical, mental health care & dental care. Denial of access to exercise opportunitys & being forced to be housed in an unsafe housing/environment & they all ignored his

> complaints & even retaliated against him for making them aware of his pain! Suffering! Constitutional rights that have been violated as a direct result of these conditions that he's being subjected to on a daily basis.

(Doc. 22 at 4-5 ¶¶ 5-6). Under the Federal Rules of Civil Procedure, §§ 1915A and 1983, and relevant precedent, allegations of this nature are insufficient to state a claim against any of the named defendants for liability in their personal or official capacities.

Plaintiff's entire complaint is riddled with long complex allegations that the named defendants violated his rights by failing to improve the environment at Menard. The Court understands that Plaintiff is frustrated by the conditions at Menard, but as the *Burk* Court noted, § 1983 is a narrow species of tort liability that does not give rise to a general duty to rescue or render aid. *Burks*, 555 F.3d at 596. Even if Plaintiff had drawn the allegations in his complaint more narrowly, focusing on individuals that he interacts with at the facility level, it is not at all clear that he has identified any situation that warrants constitutional relief. For example, he complains of scenarios where he was too hot or cold and thus felt nauseous or contracted a common cold, but such ailments are issues faced in everyday life, and do not rise to the level of a constitutional violation. *Adams v. Pate,* 445 F.2d 105, 108-09 (7th Cir. 1991) (conditions that create temporary inconveniences and discomforts or that make confinement in such quarters unpleasant are insufficient to state an Eighth Amendment claim). After a thorough review of his Amended Complaint, the Court cannot discern any allegations that could be crafted into a valid § 1983 claim.

As for Claim Three, Plaintiff's claim of intentional infliction of emotional distress, this claim does not give rise to a federal cause of action. Under 28 U.S.C. § 1367(c), a court

has discretion to dismiss claims that rely on state law if all claims over which a court has original jurisdiction have been dismissed. *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 908 (7th Cir. 2007). This Court has dismissed all claims over which it has original jurisdiction, and it declines to exercise supplemental jurisdiction over any state law claim.

The Court gives leave to file amended pleadings freely, but it does not need to give leave or "solicit more litigation spontaneously" where it is not apparent what claim a plaintiff might substitute for those that already failed. *See e.g. Burks*, 555 F.3d at 596; *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (courts may deny leave to amend if an amendment would be futile); *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) (leave to amend shall be granted where justice so requires, but leave to amend need not be given if an amendment to the complaint would be futile). Here, Plaintiff was already given an opportunity to file an amended complaint, and he was warned about problems with sprawling claims like those presented in the amended complaint. The Court does not find that if it granted him leave to amend a second time, he would be able to further remedy the problem. Plaintiff's lawsuit is simply too generic and sweeping to state a valid claim. Accordingly, the case will be dismissed for failure to state a claim and Plaintiff will not be given leave to amend.

## Motion for a Temporary or Permanent Injunction

On February 7, 2022, Plaintiff filed a 44-page motion for a temporary restraining order or a preliminary or permanent injunction. (Doc. 24). Only 15 of the 44 pages contain factual and legal allegations pertinent to the requested relief. In short, Plaintiff alleges that his access to the courts is being hindered and that he is being prevented from

accessing the necessary materials and services to litigate this case and to seek redress for the constitutional harms he has suffered. Access to the courts is a freestanding legal claim, although it is not an issue Plaintiff raised as a claim in this particular lawsuit. *See e.g.*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (access to the courts is a well established right).

The same legal framework is used to determine whether a TRO or a preliminary injunction is warranted. A plaintiff must establish that:

(1) his underlying case has some likelihood of success on the merits;

(2) no adequate remedy at law exists; and

(3) he will suffer irreparable harm without the relief.

See *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citing *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007)).

Plaintiff cannot establish the first basis required for issuance of a temporary or permanent injunction because he has not established a likelihood of success on the merits of his case. Plaintiff's case is being dismissed in its entirety. It follows that Plaintiff's Motion for Injunctive Relief will be denied. Whatever merit there may be to Plaintiff's complaints about access to the courts, he obviously has not been prevented from filing the essential documents in this case—the complaint, amended complaint, and motions. Plaintiff's Motion for Temporary or Permanent Injunctive Relief (Doc. 24) is DENIED. Likewise, the Motion Requesting a Courtesy Copy of the Motion for Injunction (Doc. 23) is DENIED.

## Disposition

Based on the foregoing analysis, the Court will DISMISS Plaintiff's entire complaint for failure to state a claim under 28 U.S.C. § 1915A. Plaintiff will not be given leave to amend.

Plaintiff's Motion for a Temporary or Permanent Injunction (Doc. 24) and his Motion for a Courtesy Copy (Doc. 23) are DENIED in light of the dismissal of this lawsuit.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $505.00 filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is DIRECTED to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

Dated: February 16, 2022

DAVID W. DUGAN
United States District Judge